IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL D. STORMAN,

    Plaintiff,                        No. CIV S-06-2892 GEB GGH PS

    vs.

CA. DEPT. OF HEALTH SERVICES,      ORDER & FINDINGS & RECOMMENDATIONS
MEDI-CAL DIRECTOR, and
U.S. DEPT. OF HEALTH & HUMAN
SERVICES,

    Defendants.

_____/

        Plaintiff, proceeding in this action pro se, has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This case is referred to this court pursuant to E. D. Cal. L. R. 72-302(c)(21) and 28 U.S.C. § 636(b)(1).

        Plaintiff has submitted an affidavit making the showing required by 28 U.S.C. § 1915(a)(1).[1] Accordingly, the request to proceed in forma pauperis will be granted.

\\\\\

---

[1] Plaintiff states that he was last employed July 2000, with an hourly wage of $6.00; that he receives monthly Social Security Disability and Supplemental Security Income payments totaling $856; that his checking account contained $157 as of November 1, 2006; that plaintiff does not have any property and has no dependents.

1

1  However, the determination that plaintiff may proceed in forma pauperis does not
2  complete the required inquiry.  Pursuant to 28 U.S.C. § 1915(e)(2), the court is directed to
3  dismiss a case at any time if it determines the allegation of poverty is untrue, or the action is
4  frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary
5  relief against an immune defendant.
6  A complaint, or portion thereof, fails to state a claim if it appears beyond doubt
7  there is no set of supporting facts entitling plaintiff to relief.  Hishon v. King & Spalding, 467
8  U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt
9  Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under
10  this standard, the court must accept as true its allegations, Hospital Bldg. Co. v. Rex Hosp.
11  Trustees, 425 U.S. 738, 740 (1976), construe it in the light most favorable to plaintiff, and
12  resolve all doubts in plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 ( 1969).
13  Pro se pleadings are liberally construed.  See Haines v. Kerner, 404 U.S. 519,
14  520-21, 92 S. Ct. 594, 595-96 (1972); Balistreri v. Pacifica Police Dep't., esophagus F.2d 696,
15  699 (9th Cir. 1988).  Unless it is clear that no amendment can cure the defects of a complaint, a
16  pro se plaintiff proceeding in forma pauperis is entitled to notice and an opportunity to amend
17  before dismissal.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987); Franklin, 745 F.2d
18  at 1230.
19  For the following reasons, the complaint should be dismissed without leave to
20  amend.
21  BACKGROUND
22  The complaint alleges that defendants' implementation of Medicare Part D, on
23  January 1, 2006, which resulted in the imposition of copayments for plaintiff's prescription
24  drugs, causes plaintiff undue financial hardship.  Plaintiff states that he takes ten prescription
25  medications (including lorazepam, acyclovir, clonidine, haldol, pimozide, "attenenol,"
26  "oxybutyyn," viagra, vicodin and protonix) for his medical conditions (which include Tourette's

Syndrome, Barrett's disease of the esophagus, acid-reflux, major depression, anxiety, hemochromatosis, keratoconus, ADD, OCD and herpes).  Plaintiff asserts the requirement of copayments unfairly discriminates against poor disabled persons in violation of the U.S. Constitution, Title II of the Americans with Disabilities Act, and California Civil Code § 3345[2] (authorizing damages for unfair or deceptive practices against senior citizens or disabled persons).  Plaintiff seeks: "(1) An injunction of Medicare Part D's low-income subsidy and that Medi-Cal cover 100% of all 10 of plaintiff's prescription drugs; (2) That the Government return all of the money plaintiff has paid for his 9 prescription drugs since January 1, 2006; [and] (3) Unspecified punitive and compensatory damages as determined by Judge or Jury for causing plaintiff unbearable financial and psychological harm."  Complaint, at p. 3.

        The legal framework underlying the change in plaintiff's prescription drug coverage from MediCal (with no copayments) to Medicare, was clearly set forth by Judge Morrison C. England, in <u>Medicare and Medicaid Independent Living Center of Southern California, Inc. v. Leavitt</u>, Civ. S-06-0435 MCE KJM, 2006 WL 1409621 (E.D.Cal. 2006), wherein Judge England denied plaintiffs' motion to enjoin the implementation of the Medicare Prescription Drug, Modernization and Improvement Act of 2003, 42 U.S.C. § 1395w-101, et seq. ("MMA") to the extent it changed prescription drug coverage for individuals (like plaintiff herein) dually eligible under both Medicare and Medicaid.  As described by Judge England (<u>id</u>., at *1-2):

> Title XVIII of the Social Security Act, commonly known as the Medicare Act, establishes a program of federally subsidized health insurance for the elderly and disabled.  42 U.S.C. §§ 1395, et seq. . . . Through enactment of the MMA, Congress provided Medicare coverage for drugs under what is now referred to as Part D of the Medicare program. . . . Part D became effective on January 1, 2006.
>
> Another portion of the Social Security Act, Title XIX, establishes a separate federal-state program providing medical assistance for categorically low-income

---

[2] Plaintiff also cites the California Penal Code, both generally and specifically (erroneously citing nonexistent Cal. Penal Code § 3345), apparently in reference to penalties plaintiff believes should be associated with Cal. Civil Code § 3345.

persons. 42 U.S.C. §§ 1396, et seq.  This coverage, known as Medicaid, or MediCal in California, is administered by the states and funded in part through federal aid so long as each state's program complies with applicable Medicaid laws and regulations.  See Alexander v. Choate, 469 U.S. 287, 289, n. 1, 105 S.Ct. 712 [] (1985).

About 6 million dual eligibles qualify for both Medicare and Medicaid benefits. For those individuals, Medicare generally pays first and Medicaid provides protection for services not covered under Medicare.  Prior to enactment of the MMA, Medicaid paid for dual eligibles' prescription drugs. . . . [¶ ] Exclusive provision of prescription drugs through Medicaid has changed with the advent of the MMA.  Under Part D, Medicare becomes the primary payer for dual eligibles as to all drugs covered under Medicare.  The Medicaid Act was consequently amended to provide that Medicaid is not available for such drugs.  42 U.S.C. § 1396u-5(d)(1).  The State of California similarly enacted Welfare and Institutions Code § 14133.23, which eliminated the provision of drug benefits under MediCal to dual-eligible beneficiaries that would otherwise now be covered under Medicare, Part D.

. . . .under Part D, even dual eligibles with incomes not exceeding the poverty level must make a modest co-payment for needed drugs, ranging from $1 for generic medicines to $3 for name brands.[3]

Because certain drugs that had been covered under MediCal are not included under Medicare Part D, states may continue to provide Medicaid coverage for such drugs, and California has so elected.

The many documents submitted by plaintiff herein demonstrate that prior to January 1, 2006, the California Department of Health Services informed plaintiff that his prescription drug coverage would no longer be provided by Medicaid/MediCal but by Medicare. Plaintiff was informed, "If you are on no-cost Medi-Cal and Medicare, you will get extra help automatically through Medicare . . . [but] [y]ou will pay a copayment from $1 to $5 for each prescription you get."  Complaint, at p. 26.  Plaintiff thereafter received a Notice of Change from his health provider, Kaiser Permanente, that his prescription drug benefits under the Kaiser Senior Advantage program would be provided by Medicare, not Medicaid/MediCal.  Id., at pp. 28, 33.

---

[3] "This is a change from prior coverage available to dual eligibles under Medicaid, which provided that no services would be denied on account of a beneficiary's 'inability to pay a deduction, cost sharing, or similar charge ...'" 42 U.S.C. § 1396o(e). [Fn. 2 in original text.]

1  On January 30, 2006, Kaiser denied plaintiff's request to receive three of his
2  medications (Clonidine, Orap and Halaperidol) at no cost, stating "We denied this request
3  because it is not a covered benefit." Id., at p. 37.  This decision was confirmed in a
4  Redetermination Notice issued February 10, 2006, wherein Kaiser stated, "We denied this
5  request because co-payments are a contractual obligation under your Health Plan benefits."
6  Complaint, at p. 35.  Kaiser explained that plaintiff was required to make a $1 copayment for
7  generic prescription drugs (Clonidine and Haloperidol), and a $3 copayment for brand name
8  prescription drugs (Orap).  Id.  Plaintiff accepted Kaiser's invitation to appeal the matter to an
9  independent review panel which, on March 10, 2006, affirmed Kaiser's decision because "the
10 plan does not have to waive your co-payments for these drugs."

11  On March 17, 2006, plaintiff requested a hearing before an administrative law
12 judge within the U.S. Department of Health and Human Services, Office of Medicare Hearings
13 and Appeals.  Telephonic hearings were held on April 27 and May 16, 2006.  On July 16, 2006,
14 the administrative law judge issued a decision concluding that the Medicare Part D statute and
15 implementing regulations authorize Kaiser's assessment of copayments for prescription
16 medications.  Complaint, at pp. 50-56.  The judge noted plaintiff's dual eligibility under both
17 "Medicare for disability and Medicaid (Medi-Cal) as a low income person with significant
18 physical and mental limitations," and found that prescription drug coverage for such "dual
19 eligible individuals" requires that Medicare be the primary payor, 42 U.S.C. § 1396u-5(d)(1),
20 excluding other financial assistance for cost-sharing obligations, 42 C.R.F. § 423.906.  The
21 administrative law judge rejected plaintiff's claim this arrangement discriminates against low
22 income persons on the basis of handicap, reasoning that "others participate [in Medicare] because
23 of age and previous employment," and stated he was unaware "of any limitation on the ability of
24 Congress to condition and limit participation in federal subsidy programs on the basis of income
25 \\\\\
26 \\\\\

5

1  levels."[4]  Complaint, at p. 53.

2  Plaintiff thereafter sought review from the Medicare Appeals Council, which

3  issued a decision on December 12, 2006.  Affirming the decision of the administrative law judge,

4  the administrative appeals judge concluded: "The record shows that the copayments that the plan

5  applies to its low-income subsidy enrollees are consistent with the copayment amounts specified

6  in the Part D regulations for similarly situation low income individuals.  See, 42 C.F.R. §

7  423.782(a)(2)(iii).[5]  The Council finds no legal grounds for requiring the Part D plan to waive the

8  copayments that the enrollee pays for the three drugs at issue."  Complaint, at pp. 60-61.

9  Plaintiff thereafter filed this civil action seeking judicial review of the Medicare

10  Appeals Council decision.  42 C.F.R. § 405.1136.

11  Meanwhile, on February 8, 2006, after he was denied refills of his prescriptions

12  without copayments for clonidine, Pimozide and Haldol, plaintiff requested a hearing before the

---

[4]  The judge noted that Kaiser had found plaintiff ineligible for the Kaiser Permanente Charity Care/ Medical Financial Assistance Program (MFAP) because his medical costs are covered by Medicaid/ MediCal, and yet it was precisely because of plaintiff's participation in Medicaid that he was transferred to Medicare Part D prescription drug coverage resulting in an increase in plaintiff's out-of-pocket medications costs.  Although the judge noted his concern that plaintiff "was limited to only one of the two subsidy programs and was not given a choice as [to] which program would suit his needs," he concluded "the fairness or reasonableness of the MFAP is not an issue before me."

[5]  42 C.F.R. § 423.782(a)(2)(iii) provides in pertinent part:

(a)  Full subsidy eligible individuals.   Full subsidy eligible individuals are entitled to the following:
. . . (2) Reduction in cost-sharing for all covered Part D drugs covered under the PDP or MA-PD plan below the out-of-pocket limit (under § 423.104), including Part D drugs covered under the PDP or MA-PD plan obtained after the initial coverage limit (under § 423.104(d)(4)), as follows:
. . . (iii) Full-benefit dual eligible individuals with incomes that do not exceed 100 percent of the Federal poverty line applicable to the individual's family size are subject to cost-sharing for covered Part D drugs equal to the lesser of:
(A) A copayment amount of not more than $1 for a generic drug or preferred drugs that are multiple source (as defined under section 1927(k)(7)(A)(i) of the Act) or $3 for any other drug in 2006 . . . .

6

1  California Department of Health Services.  The hearing was held April 3, 2006, and a decision
2  issued May 10, 2006.  Plaintiff sought continuing MediCal coverage of these prescriptions
3  without copayments.  Although the Department noted that MediCal continues to pay for
4  plaintiff's prescription for lorazepam, because California has opted to continue coverage of this
5  class of drugs (benzodiazepine), as permitted under Medicare, MediCal is precluded under
6  Medicare Part D from paying for plaintiff's other medications.  Complaint, at pp. 41-43.
7  Although the Department found plaintiff credibly testified that "the co-payments are sufficiently
8  high, based upon his income, that he is unable to afford to purchase his medications and as of the
9  hearing date, had not continued to take necessary medications, due to their co-payment costs
10 under Medicare Part D," it nonetheless concluded that the requirement of copayments for these
11 prescription drugs  "appears to be the correct outcome under federal Medicare Part D law, which
12 the MediCal program is required to follow."  Id., at p. 43.

13  Plaintiff sought review of this decision by the California Department of Health
14 Services by filing a claim with the California Government Claims Board.  On October 27, 2006,
15 plaintiff was notified that his claim had been rejected by the Board at its October 19, 2006
16 hearing.  Plaintiff thereafter filed this civil action.  Cal. Govt. Code § 945.6.

17 ANALYSIS

18  For the following reasons, the court recommends dismissal of plaintiff's
19 complaint without leave to amend.

20  Plaintiff's damages claims are noncognizable against either the federal or state
21 government.  Sovereign immunity protects the federal government from monetary damages
22 awards.  Lane v. Pena, 518 U.S. 187, 200, 116 S. Ct. 2092, 2100 ( 1996).  Absent a statutory
23 waiver of sovereign immunity, the United States cannot be sued and claims against it must be
24 dismissed.  Elias v. Connett, 908 F.2d 521, 527 (9th Cir. 1990); United States v. Mitchell, 445
25 U.S. 535, 538, 100 S. Ct. 1349, 1351 (1980), United States v. King, 395 U.S. 1, 4, 89 S. Ct.
26 1501, 1503 (1969).  Similarly, "[t]he Eleventh Amendment bars suits against the State or its

agencies for all types of relief, absent unequivocal consent by the state." Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir.1999) (citing Pennhurst v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900 (1984)).[6] Absent consent by the state or congressional authorization, damage suits against the state public treasury are clearly precluded by the Eleventh Amendment. Ford Motor Company v. Department of Treasury, 323 U.S. 459, 464, 65 S. Ct. 347 (1945).

Accordingly, plaintiff may not pursue his claims for restitution or compensatory and punitive damages.

Remaining is plaintiff's claim for injunctive relief against both the state and federal governments that would in effect annul implementation of the Medicare Part D prescription drug program. Plaintiff asserts this remedy is warranted under the U.S. Constitution, the Americans with Disabilities Act, and state statute.

Analysis of plaintiff's broad constitutional challenge (as authorized by 42 U.S.C. § 1983) necessarily begins with his central contention that poor disabled persons, eligible for benefits under both Medicare and Medicaid/MediCal, have been disproportionately and unconstitutionally impacted by the implementation of Medicare Part D's prescription drug coverage plan requiring nominal copayments. This contention – raised as an alleged violation of Fifth Amendment due process and equal protection rights – was considered and appropriately rejected by Judge England in Independent Living, supra, 2006 WL 1409621 at pp. *6-7:

> Plaintiffs contend that their due process rights as protected by the Fifth Amendment are violated by the MMA's requirement that dual eligibles make nominal co-payments for needed prescriptions. Plaintiffs appear to argue that requiring such payments is not only unjustifiable and in derogation of Fifth Amendment due process but also amounts to discrimination against the poor in violation of equal protection concerns also guaranteed by the Fifth Amendment.

---

[6] The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." The Court has extended the provision to protect against suits by citizens against their own states. See Kimel v. Florida Bd. Of Regents, 528 U.S. 62, 72-73, 120 S. Ct. 631(2000); College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669-670, 119 S. Ct. 2219 (1999).

> It has long been held that the due process clauses of both the Fifth and Fourteenth Amendments are intended to prevent governmental abuse of power, and "generally confer no affirmative right to governmental aid". DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196, 109 S.Ct. 998 [] (1989). Moreover, with respect to equal protection, the constitutionality of the co-payment provision must be judged under a rational basis standard, since poverty alone is not a suspect classification demanding strict scrutiny. See Harris v. McCrae, 448 U.S. 297, 323, 100 S.Ct. 2671 [](1980). Consequently the government need only show a rational relationship between its requirement of co-payments and a legitimate governmental purpose. Bd. Of Trs. Of Univ. Of Ala. v. Garrett, 531 U.S. 356, 367, 121 S.Ct. 955 [](2001).
>
> Here, the government can show a rational relationship between allocating limited aid dollars and fostering investment by dual eligibles in the efficiency of their own medical care through demanding small co-payments as a demonstration of accountability.

As Judge England concluded, "due process rights are not impinged simply because of limitations in governmental aid implicit in coverage that falls short of offering unrestricted access to all prescription drugs." Id., at p. *7.

Plaintiff's only remaining claim against the federal government is, implicitly, violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. Plaintiff's claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12132, applicable to state and local services, may broadly be construed to include Rehabilitation Act claims. See 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.")[7] Like Title II of the ADA, section 504(a) of the Rehabilitation Act, codified at 29 U.S.C.A. § 794(a), prohibits discrimination against otherwise qualified disabled persons under any program or activity conducted by an executive agency or receiving federal financial assistance.[8]

---

[7] Title II of the ADA and section 504 of the Rehabilitation Act create the same rights and obligations. Wong v. Regents of the University of California ("Wong II"), 410 F. 3d 1052, 1055, n. 1 (9th Cir. 2005).

[8] 29 U.S.C.A. § 794(a) provides in pertinent part: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, *solely by*

However, as pointed out by the first administrative law judge to consider plaintiff's allegations, the copayment required of Medicare "is imposed only because of income level and not because of handicap status.  (42 C.F.R. §§ 423.774 [low income] and 423.906 [Medicare as primary payer]).  While it is true some low income persons participate in Medicare because of handicap, others participate because of age and previous employment."  Complaint, at p. 53.  Accordingly, plaintiff cannot claim discrimination on the basis of handicap or disability, and therefore cannot state a claim against the federal agency under the Rehabilitation Act.

For the same reason, plaintiff's ADA claims against the state must fail.  While there is no question that the Eleventh Amendment's grant of state sovereign immunity has been abrogated by Title II of the ADA, Phiffer v. Columbia River Correctional Institute, 384 F.3d 791, 792 (9th Cir. 2004), Title II creates a private cause of action against the States only for conduct that actually violates the Fourteenth Amendment, U.S. v. Georgia, 546 U.S. 151, ___, 126 S. Ct. 877, 882 (2006).  As under the Rehabilitation Act, plaintiff must show he suffered intentional discrimination due to a disability, which he is unable to do.

Nor is prospective injunctive relief available to plaintiff under the limited exception to Eleventh Amendment immunity established by Ex Part Young, 209 U.S. 123, 28 S. Ct. 441 (1908).  Since "Young applies only where the underlying authorization upon which the named official acts is asserted to be illegal," Papasan v. Allain, 478 U.S. 265, 277, 106 S. Ct. 2932, 2940 (1986), state compliance with lawful federal legislation does not provide grounds for injunctive relief.

Finally, plaintiff asserts violation of California Civil Code section 3345 ("Unfair or deceptive practices against senior citizens or disabled persons; treble damages").  The statute is inapplicable to these circumstances, as the underlying actions are neither legally unfair nor

---

*reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  (Emphasis added.)

deceptive.

As plaintiff has failed to state a claim on which relief can be granted against the U.S. Department of Health and Human Services, the California Department of Health Services or the unnamed MediCal Director, and the court is unable to ascertain any viable claim, dismissal of the complaint in its entirety is warranted. Fed. R. Civ. P. 12(b)(6). Since amendment of the complaint will not cure these deficiencies, dismissal should be without leave to amend.

One additional matter remains. Plaintiff moves for appointment of counsel pursuant to the criteria set forth in Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301 (9th Cir. 1981), applicable to claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. However, the instant claims are brought pursuant to the in forma pauperis provisions of 28 U.S.C. § 1915. While the district court has discretion under 28 U.S.C. § 1915(e)(1) to request (not appoint) counsel to represent an indigent civil litigant, the court must evaluate both (1) the likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See, e.g., Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.1991). While plaintiff has ably and tenaciously pursued and articulated his claims, the court finds no likelihood of success on the merits. Accordingly, the request for appointment of counsel will be denied. See Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir.1984) (motions to appoint counsel granted only in exceptional circumstances and at discretion of trial court).

CONCLUSION

Good cause appearing, IT IS ORDERED that:

1. Plaintiff's application for leave to proceed in forma pauperis, filed December 22, 2006, is GRANTED; and

2. Plaintiff's request for the appointment of counsel, filed December 22, 2006, is DENIED.

\\\\\

1       Further, IT IS HEREBY RECOMMENDED that:

2       1. The complaint, filed December 22, 2006, be DISMISSED without leave to
3 amend.

4       These findings and recommendations are submitted to the United States District
5 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten
6 (10) days after being served with these findings and recommendations, any party may file written
7 objections with the court and serve a copy on all parties. Such a document should be captioned
8 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections
9 shall be served and filed within ten (10) days after service of the objections. The parties are
10 advised that failure to file objections within the specified time may waive the right to appeal the
11 District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12 DATED: 3/9/07

                                                    /s/ Gregory G. Hollows

13                                                     _____
                                                    GREGORY G. HOLLOWS
14                                                     U. S. MAGISTRATE JUDGE

15 GGH5:Storman.ifp